IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Daniel Deering,

  Petitioner,

        v.

United States of America,

  Respondent.

CIVIL NO. 16-1655 (PG)

## OMNIBUS OPINION AND ORDER

Before the court is petitioner Daniel Deering's ("petitioner" or "Deering") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1), and the United States' ("respondent" or the "government") opposition thereto (Docket No. 17). In addition, the petitioner has filed a motion requesting that a pretrial conference be set, followed by an evidentiary hearing or, alternatively, an oral argument. See Docket No. 24. For the reasons set forth below, the Court **DENIES** petitioner's motion to vacate (Docket No. 1) and **DENIES** the motion filed at Docket No. 24.

## I.  BACKGROUND

On February 7, 2013, after waiving the right to be charged by means of an indictment, Deering pled guilty to a One-Count Information charging him with conspiracy to engage, and cause others to engage in the wholesale distribution in interstate commerce of prescription drugs without a license, in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(t), 353(e)(2)(A).[1] See Crim. No. 13-76 (PG), Docket Nos. 1 and 2. Deering, a resident of Orange County, California, was in the business of buying and selling diverted prescription drugs to various prescription-drug wholesale companies.[2] See Crim. No. 13-76 (PG), Docket No. 4. From approximately July 2007 to March 2011, Deering, in furtherance of the conspiracy, identified unlicensed sources of diverted pharmaceuticals in California; shipped the diverted pharmaceuticals to wholesale companies in Puerto Rico, and supplied said companies with pedigrees that falsely stated the prescription

---

[1] On that same date, the written Plea and Cooperation Agreement (hereinafter, the "plea agreement") and its supplement were filed with the court. Crim. No. 13-76 (PG), Docket Nos. 4 and 5.

[2] The distribution of prescription drugs was made via the petitioner's wholly owned and controlled corporation, RTL Health Source Corp.

drugs came from authorized distributors. See id. at pp. 9-10. The wholesale companies, which were owned and operated by one of Deering's co-conspirators, then sold the diverted prescription drugs to unsuspecting hospitals, pharmacies, and clinics. See id.

### 1. *Plea Hearing, Sentencing & Cooperation in between*[3]

A plea hearing was held on February 7, 2013 before U.S. Magistrate Judge Marcos E. Lopez, during which Deering was assisted and represented by his two retained attorneys, Gregory Lee ("Lee"), who appeared *pro hac vice*, and Miguel Oppenheimer ("Oppenheimer") as local counsel. Crim. No. 13-76 (PG), Docket Nos. 6 and 7. Upon advising the court of his intention to plead guilty, Deering was placed under oath and apprised of his right to plead not guilty, proceed to a trial by jury, be represented by counsel, remain silent and be presumed innocent, among others. See Federal Rule of Criminal Procedure 11(b). After instructing petitioner of the consequences of pleading guilty, questioning him, listening to his responses and observing his demeanor, Magistrate Judge Lopez made a determination that Deering was fit to enter a plea of guilty. To that end, a Report & Recommendation ("R&R") was issued by the Magistrate Judge and later adopted by this court. See Crim. No. 13-76 (PG), Docket No. 12.

Subsequently, and pursuant to the plea agreement, Deering met with government officials on numerous occasions for cooperation purposes. As a result, the government requested a downward departure under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 prior to Deering's sentencing hearing. See Crim. No. 13-76 (PG), Docket No. 39.

On February 18, 2016, Deering was sentenced to 24 months of imprisonment and to three years of supervised release as to Count One of the Information. Due to the petitioner's substantial cooperation, the court reduced the offense level and sentenced him to a term within the corresponding guideline range. Moreover, since the court imposed a sentence in accordance with the terms, conditions and recommendations of the plea agreement, the waiver of appeal and judgment contained

---

[3] In its response, the government refers to the February 7, 2013 hearing as both the "waiver of indictment hearing" and "change of plea hearing". See e.g. Docket No. 17 at pp. 3 and 8. To clarify, the record shows that on February 7, 2013 the case was called for (1) waiver of indictment, (2) filing of information, and (3) plea hearing. See Crim No. 13-76 (PG), Docket No. 6. For present purposes, any reference made herein to the "plea hearing" shall be understood to encompass all of the above-mentioned acts.

therein became effective on that same date. See Crim. No. 13-76 (PG),
Docket No. 42.

Shortly thereafter, Deering filed a motion to vacate his sentence
under 28 U.S.C. § 2255, alleging he received ineffective assistance of
counsel. See Docket No. 1. On July 11, 2016, the government filed its
opposition to petitioner's motion to vacate. In short, it argues
Deering's motion lacks merit and should be denied without a hearing.
See Docket No. 17 at pp. 4-5. The court agrees.

## II.   DISCUSSION

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to
vacate, set aside, or correct his sentence "upon the ground that the
sentence was imposed in violation of the Constitution or laws of the
United States, or that the court was without jurisdiction to impose
such sentence, or that the sentence was in excess of the maximum
authorized by law, or is otherwise subject to collateral attack." 28
U.S.C § 2255; Hill v. United States, 368 U.S. 424, 426-427, 82 S.Ct.
468 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir.2002).

### A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees that in all criminal prosecutions,
the accused has a right to the assistance of counsel for his or her
defense. U.S. Const. amend. VI. Where, as here, the petitioner moves
to vacate his sentence on an ineffective assistance of counsel basis,
he must show that "counsel's conduct so undermined the proper
functioning of the adversarial process that the trial cannot be relied
upon as having produced a just result." Strickland v. Washington, 466
U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); see also Argencourt v.
United States, 78 F.3d 14, 16 (1st Cir.1996)(a petitioner seeking to
vacate his sentence based on the ineffective assistance of counsel
bears a very heavy burden).

To be successful on his claim, the petitioner must satisfy a two-
part test. First, he must show that "counsel's representation 'fell
below an objective standard of reasonableness.'" Padilla v. Kentucky,
130 S.Ct. 1473, 1482 (2010)(quoting Strickland, 466 U.S. at 688, 104
S.Ct. 2052). Second, the petitioner must establish that there is a
reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been more favorable to him.
See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir.2013)(citing

<u>Missouri v. Frye</u>, 132 S.Ct. 1399, 1409 (2012)). Thus, the petitioner must demonstrate both incompetence and prejudice. Failure to prove one element proves fatal for the other. <u>See</u> <u>United States v. Caparotta</u>, 676 F.3d 213, 219 (1st Cir.2012).

Challenges to counsel's ineffective performance in the guilty plea context are also evaluated under the two-part <u>Strickland</u> test. <u>See</u> <u>Hill</u>, 474 U.S. 52, 58; <u>Torres-Santiago v. United States</u>, 865 F.Supp.2d 168, 178 (D.P.R.2012). The analysis only (and slightly) differs with respect to the second, or prejudice, prong which focuses on whether "counsel's performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at 58-59, 106 S.Ct. 366. To satisfy this requirement, the petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." <u>United States v. Colon-Torres</u>, 382 F.3d 76, 86 (1st Cir.2004)(quoting <u>Hill</u>, 474 U.S. at 59, 106 S.Ct. 366)(internal quotation marks omitted).

In the present case, the petitioner alleges attorney Lee was ineffective in that **(1)** he provided erroneous, pre-arrest advice on the legality of the conduct which formed the basis of petitioner's conviction,[4] and **(2)** later failed to disclose the fact that such advice ***may have*** given rise to a conflict of interest. <u>See</u> Docket No. 1 at page 1. For that reason, Deering concludes that his decision to enter a guilty plea was not made voluntarily, intelligently, and knowingly; rather, it was the product of Lee's deficient representation. The court will address each claim, or subset thereof, in turn.

Before doing so, however, we remind litigants, and habeas petitioners in particular, of the following: the right to counsel under the Sixth Amendment is premised on the notion that in an adversarial proceeding or trial, "access to counsel's skill and knowledge is necessary to accord … ample opportunity to meet the case of the prosecution[.]" <u>Strickland</u>, 466 U.S. at 685, 104 S.Ct. 2052. That right does not extend to, or guarantee, competent legal counsel regarding all imaginable aspects of the accused's life. Thus, for present purposes, the relevant inquiry is whether the petitioner was

---

[4] Specifically, he claims Lee "advised [him] in writing that the conduct which ultimately formed the factual basis of his conviction would not result in criminal liability." Docket No. 2 at pp. 1-2.

effectively assisted by counsel in the particular proceeding envisioned by the amendment--the criminal prosecution. See U.S. Const. amend. VI.

### *1. Pre-prosecution counsel*

Together with his § 2255 motion, Deering submitted a letter dated June 27, 2008, where Lee provided the allegedly erroneous, pre-arrest advice. See Docket No. 1-2 at pp. 2-3. As Deering acknowledges in his motion to vacate, the letter was sent in response to his request for a legal opinion on the manner in which to conduct his business within the secondary wholesale market for drug prescriptions. Specifically, petitioner inquired as to the pedigree laws which require compliance and the payment of his invoices in cash. See id. at page 1.

In his letter, Lee addressed the general framework of the pedigree laws applicable to the prescription drug market, reminding Deering that "if a law is in place it is there for a reason…in this case…[,] the protection of the chain of distribution is of the highest priority." Id. at page 2. As to the issue of compliance with such laws, Lee's advice was "to display the end of the pedigree, which shows that the authorized distributor is true and correct." Id. at page 2. Lee further emphasized industry concerns with the introduction of counterfeit merchandise or adulterated products in interstate commerce. See Docket No. 1-2 at pp. 2-3. Regarding the payment of invoices in cash, Lee's counseled petitioner to "keep meticulous records and file the appropriate tax forms" disclosing such payments. Id. at page 3.

Contrary to Deering's assertions, Lee's legal opinion **did not** contemplate or sanction the conduct for which the petitioner entered a guilty plea. That conduct included supplying diverted pharmaceuticals with pedigrees that falsely stated they had been purchased from authorized distributors. Indeed, in the opinion letter Lee went as far as to advise the petitioner to disclose the middlemen in the pedigrees upon the request by any regulatory body or in the event of a recall. See id. at page 2. Ultimately, Lee's advice was not erroneous, unprofessional or even misleading. But even assuming the letter at issue contained subpar counsel, the relevant inquiry here would still be whether it gave rise to a conflict of interest that adversely

affected Lee's performance at any stage of the criminal prosecution
that would trigger the protections of the Sixth Amendment.

   **B. Conflict of Interest**

   Case law distinguishes ineffective assistance from conflict of
interest claims. See Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100
S.Ct. 1708 (1980)(holding that a defendant who did not raise the
alleged conflict during the criminal case "must demonstrate that an
actual conflict of interest adversely affected his lawyer's
performance"); United States v. Burgos-Chaparro, 309 F.3d 50, 52 (1st
Cir.2002)(distinguishing ineffective assistance and conflict of
interest claims in the usual context of attorney's joint
representation of criminal defendants). The First Circuit Court of
Appeals has explained that "[w]hen a defendant's claim rests solely on
allegations that counsel performed ineffectively or incompetently, the
defendant must also show prejudice." United States v. Segarra-Rivera,
473 F.3d 381, 385 n. 2 (1st Cir.2007)(citing Strickland, 466 U.S. at
692-93, 104 S.Ct. 2052; Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st
Cir.1994)). If, however, a defendant makes a timely and colorable
showing of an actual conflict of interest on the part of his or her
attorney, he or she "may be entitled to relief without regard to proof
of prejudice." Id. (citing Cuyler v. Sullivan, 446 U.S. at 349-50, 100
S.Ct. 1708; United States v. Torres-Rosario, 447 F.3d 61, 64 (1st
Cir.2006)).

   For Sixth Amendment purposes, an "actual conflict" will require a
showing of "a conflict sufficient to displace that presumption-one
that adversely affects counsel's performance." Id. (quoting Mickens v.
Taylor, 535 U.S. 162, 172 n. 5, 122 S.Ct. 1237 (2002)). A mere
disagreement between lawyer and client rarely amounts to an actual
conflict sufficient to trigger the amendment's protections. See id.
Nonetheless, "[c]ourts have recognized actual conflict of interest
between an attorney and his client when pursuit of a client's
interests would lead to evidence of an attorney's malpractice." United
States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir.1994)(citing
cases). In order to show an actual conflict of interest, a defendant
(or habeas petitioner) must demonstrate that "(1) the lawyer could
have pursued a plausible alternative defense strategy or tactic and
(2) the alternative strategy or tactic was inherently in conflict or

not undertaken due to the attorney's other interests or loyalties." Id., at 486 (citing Guaraldi v. Cunningham, 819 F.2d 15, 17 (1st Cir.1987)).

Here, Deering argues that Lee labored under a **hidden** conflict of interest because he appeared to be "more concerned with his own position and consequences than those of his client." Docket No. 2 at page 5. The petitioner contends that the "only logical explanation" for Lee's actions, in both concealing the opinion letter – and hence, the basis for the purported conflict – and encouraging Deering to plead guilty, was to avoid presenting the advice-of-counsel defense or other embarrassing consequences. See Docket No. 2. That is, had Deering refused to plead guilty and instead insisted on going to trial, Lee would have been faced with having to testify in favor of his client and against his own self-interest and professional reputation. The record, however, readily belies Deering's theory.

By his own admission, Lee's opinion letter *was* disclosed to the prosecution by Deering himself early in 2013. See Docket No. 1-1 at page 3. In its opposition to the motion to vacate, the government concedes that the letter was made available without it bearing any significant consequence on the outcome of plea negotiations or the case. See Docket No. 17 at pp. 8-9. No facts have been called to the court's attention indicating that Lee's counseling regarding petitioner's acceptance of the government's plea offer was directly related to conflicting interests between lawyer and client. Notably, Deering falters at evincing that were it not for counsel's alleged ineffectiveness or omissions he would have maintained his innocence and gone to trial.

Other than Deering's wishful conjecture, nothing in the record suggests that Lee would have been called to testify in such an event. Significantly, his pre-prosecution advice postdates Deering's immersion in the prescription drug diversion scheme in July of 2007. Consequently, regardless of Lees' counsel, the fact remains that by the time Deering received the opinion letter he was already engaging in, and thereafter continued to engage in, the wholesale distribution of diverted prescription drugs without a license. It is also undisputed that Deering agreed to, and in fact did substantially cooperate with the United States in the prosecution of other related

cases. His ability to do so by identifying critical aspects of the scheme, such as the participants, the brands of prescription drugs and their costs, severely undercuts his post-conviction attempt to deny, or even limit, his knowing participation in the same.

In light of the ample evidence indicating that the petitioner was well aware of the illegality of his conduct, the advice-of-counsel defense is implausible on its face. See Covey v. United States, 377 F.3d 903 (8th Cir.2004)(rejecting viability of the "advice of counsel" defense, and thus, defense attorney's alleged conflict of interest, where all of the evidence indicated that the defendant acted with the requisite criminal intent); but see United States v. Marcano-Garcia, 622 F.2d 12 (1st Cir.1980)(per se Sixth Amendment violation due to trial counsel's implication in the crime for which his client withstood trial).[5]

Having failed to show that Lee did not undertake a plausible alternative defense because of his own loyalties or interests, that is, the existence of an actual conflict of interest, Deering must meet the heavy burden of demonstrating that his attorney's performance was deficient, and that said deficient performance prejudiced his defense. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Deering fails to meet this standard and the record so reflects.

### C. Ineffective Assistance *(Back to Strickland)*

Petitioner claims that his decision to plead guilty was not made voluntarily, but rather was the product of Lee's counsel and insistence. According to Deering, Lee stated he was confident that at the sentencing hearing, the undersigned would "go along with the plea bargain" and impose a sentence of probation.[6] See Docket No. 1-1 at page 4. More than a lack of corroboration, this bold allegation is contradicted by the record.

First off, Deering entered into a plea agreement with the government pursuant to which he pled guilty to the One-Count Information in exchange for a particular sentencing recommendation. As part of the terms and conditions set forth therein, the petitioner agreed to the following:

---

[5] As discussed below, Deering's plea hearing declarations confirm that he committed the offenses with which he was charged knowingly and willfully.

[6] The court has had a very difficult time ascertaining whether these allegations are related to, or independent from the already-discarded conflict of interest theory.

The defendant is aware that the defendant's sentence is within the sound discretion of the sentencing judge, but the same may be imposed following the <u>United States Sentencing Guidelines, Policy Statements, Application, and Background Notes</u> as advisory to the imposition of the sentence. The defendant is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty. If the Court should impose a sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

Crim. No. 13-76 (PG), Docket No. 4 at pp. 3-4.

By signing the agreement, Deering also acknowledged that he was satisfied with attorney Lee's "effective legal assistance." <u>Id.</u> That assistance included, *inter alia,* consulting and reaching a full understanding of his rights regarding (1) the Information filed against him; (2) the applicable provisions of the Sentencing Guidelines; (3) and the plea agreement, every part of which he reviewed with counsel. <u>See id.</u> at page 8. At the plea hearing, the Magistrate Judge further inquired into all aspects covered by the plea agreement, including the petitioner's satisfaction with counsel.

### 1. *Rule 11 & Deering's Guilty Plea*

"In order to be constitutionally valid, a guilty plea must be voluntary and intelligent." <u>United States v. Delgado-Hernandez</u>, 420 F.3d 16, 19 (1st Cir.2005)(citing <u>Bousley v. United States</u>, 523 U.S. 614, 618, 118 S.Ct. 1604 (1998)). Before accepting a plea of guilty, the defendant must be placed under oath, and the court must address him or her personally in open court. <u>See</u> <u>United States v. Pimentel</u>, 539 F.3d 26, 28 (1st Cir.2008)(quoting Fed.R.Crim.P. 11(b)(1)). The court "then informs the defendant of his rights and makes a determination that the defendant understands his rights." <u>Id.</u> at 28-29. Also, the court must address and ascertain whether the plea satisfies the following so-called core concerns of Rule 11: "(1) absence of coercion, (2) understanding of the charges, and (3) knowledge of the consequences of the plea." <u>Id.</u> at p. 29 (quoting <u>United States v. Rodríguez-León</u>, 402 F.3d 17, 24 (1st Cir.2005)). The

First Circuit has held that only violations concerning these core matters requires that the plea be set aside.[7]

Here, the petitioner was placed under oath, addressed personally and in open court, and advised of his constitutional rights. After finding the petitioner competent for purposes of the plea hearing, the court instructed Deering as to the nature of the charges, and the fact that he would be facing a maximum term of imprisonment of five years, a fine not greater than $250,000, and a maximum term of supervised release of three years. Indeed, the transcript of the plea hearing shows that the court went to great lengths to ensure that Deering understood the charges against him and the consequences of accepting criminal responsibility:

| | |
|---|---|
| The court: | Do you understand that if you plead guilty and your plea[] [is] accepted, you will be waiving any possible challenge to the government's evidence? |
| Deering: | Yes. |
| The court: | Do you understand that once adjudged guilty sentence or punishment will be left to the discretion of the Court? |
| Deering: | Yes. |
| The court: | Do you understand that you will not be allowed to withdraw your plea solely because you disagree with the sentence that the Court may eventually impose? |
| Deering: | Yes. |
| The court: | Do you understand that even if the Court imposes the maximum statutory penalty, you will not be able to withdraw your guilty plea for that reason alone? |
| Deering: | Yes. |
| The court: | Do you understand that in addition to a term of imprisonment and a fine, the Court may also impose a term of supervised release as part of the sentence of the case? |
| Deering: | Yes. |

Crim. Case No. 13-76 (PG), Docket No. 65 at pp. 21-22.

---

[7] It is important to note that in his § 2255 motion, the petitioner does not request that his plea of guilty be set aside. Indeed, he does not even point to any irregularity that might have affected the plea-taking proceeding. His only claim is that "the plea[] and waivers…were not intelligent, knowing and voluntary due to ineffective assistance of counsel." Docket No. 1 at page 1. Ordinarily, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." See U.S. v. Zannino, 825 F.2d 1, 17 (1st Cir.1990). Withal, out of an abundance of caution, the court conducted an independent review of the record to ascertain whether any of the core concerns of Rule 11 was violated during the plea hearing.

The court thus finds that the "knowing" requisite of Deering's plea is met. <u>See</u> <u>United States v. Jimenez</u>, 498 F.3d 82, 86 (1st Cir.2007)(holding that the defendant's acceptance, during a change-of-plea hearing, that he understands a clear explanation of his potential sentencing exposure is strong evidence of the knowing nature of his guilty plea). The court also asked the petitioner **on more than four occasions** if anyone had threatened or coerced him into pleading guilty, and Deering replied "no." <u>See</u> <u>id.</u> at pp. 21-22, 35 and 38. Upon further questioning, Deering assured the court that he had discussed the plea agreement with his attorney, he agreed with its terms, and he was satisfied with his legal representation. <u>See</u> <u>id.</u> at pp. 10-11. In the matter at hand, the court finds Deering's statements at the plea hearing "sufficiently conclusive to contradict his [ineffective assistance] claims." <u>See</u> <u>United States v. Santiago Miranda</u>, 654 F.3d 130, 138 (1st Cir.2011)(<u>quoting</u> <u>United States v. Pulido</u>, 556 F.3d 52, 60 (1st Cir.2009))(internal quotation marks omitted).

The First Circuit has repeatedly stated that the constitutional validity of a guilty plea also requires the plea-taking court to find that a factual basis for the plea exists. <u>See</u> Fed.R.Crim.P. 11(b)(3); <u>Jimenez</u>, 498 F.3d 82, 86 (1st Cir.2007)(explaining that the requirement of Rule 11(b)(3) "serves to ensure that the defendant's conduct actually corresponds to the charges lodged against him"). Here, the record conclusively establishes that the factual basis requirement was met. After providing a factual summary of the charges against him, the court engaged Deering in the following questions:

| | |
|---|---|
| The court: | I'm asking...are these the charges to which you're pleading guilty to? |
| Deering: | Yes. |
| The court: | Do you admit that you committed these offenses knowingly? In other words, not by accident or by mistake, but rather fully aware of what you were doing? |
| Deering: | Yes. |
| The court: | And do you admit that you committed these offenses willfully; that is voluntarily and with the intent to further the conspiracy's objects? |
| Deering: | Yes. |

Crim. No. 13-76(PG), Docket No. 65 at pp. 28-29.

Furthermore, at the Magistrate Judge's request, the United States provided a summary of the evidence with which it would have proven the petitioner's guilt beyond a reasonable doubt had the case proceeded to trial. See id. at pp. 44-46. Subsequently, the following exchange took place:

> The court:    Mr. Daniel Deering, do you admit as true the summary of the evidence that has just been given by the prosecutor:
>
> Deering:      Yes.
>
> The court:    How do you wish to plea, Mr. Deering, to Count 1 of the information, guilty or not guilty?
>
> Deering:      Guilty.

Id. at 46-47.

It is well-settled that "a defendant's 'declarations in open court carry a strong presumption of verity.'" Santiago Miranda, 654 F.3d at 138 (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977)). Furthermore, courts are entitled to give weight to the defendant's statements at his plea hearing colloquy "absent a good reason for disregarding them." United States v. Torres-Rosario, 447 F.3d 61, 67 (1st Cir.2006). Deering's' allegations of ineffective assistance and, for that matter, of coercion are lacking in specificity and independent corroboration. By contrast, a close examination of the record reveals not only that a plea hearing was properly conducted, but that Deering entered a guilty plea out of his own volition, with a full understanding of the advantages, disadvantages and consequences of doing so.

### 2. *Sentencing Hearing*

Deering also alleges ineffective assistance based on Lee's purported unpreparedness at the sentencing hearing. See Docket No. 1. This claim also fails. There is simply no evidence to support Deering's allegation that Lee's performance fell below an objective standard of reasonableness. The court encourages petitioner to review the transcript of sentencing proceedings to confirm, as the court has, that Lee's performance was not deficient. See Crim. No. 13-76 (PG), Docket No. 70 at pp. 3-4.

At the hearing, attorney Lee provided competent representation by, *inter alia,* raising objections to the Presentencing Report and presenting all relevant arguments in support of the sentencing

recommendations proposed by the defense. On several occasions, the court addressed Deering personally and even asked him whether there was anything he wanted to say, to which Deering answered: "Your Honor, just that I'm devastated and I'm sorry." Id. at page 6.

Deering now complains that Lee failed to raise the appropriate arguments during sentencing proceedings.[8] But the record shows otherwise. First, in determining Deering's sentence, the court considered all applicable guideline adjustments, all sentencing factors set forth in 18 U.S.C. § 3553(a), the elements of the offense, and the plea agreement. See id. at pp. 10-13. Taking into account that Deering substantially cooperated in the prosecution of related cases, the court reduced Deering's total offense level to level 15, and sentenced him to 24 months of imprisonment and a term of supervised release of three years. The plea agreement, on the other hand, readily shows that the sentence of 24 months, a term within the guideline range, was precisely a recommendation that would be made by the prosecution. See Crim. No. 13-76 (PG), Docket No. 4 at page 3; Docket No. 39 at page 3.

On these facts, the petitioner cannot seriously argue, nor has he succeeded at showing, that counsel's performance resulted in a violation of his Sixth Amendment right to competent representation. Indeed, even if counsel had performed deficiently as required under the first part of the Strickland standard, petitioner has suffered no ensuing prejudice. Failure to meet the second, or prejudice, prong of the Strickland test proves fatal for Deering's claim. See Caparotta, 676 F.3d 213, 219 (1st Cir.2012). What is more, even if attorney Lee was ineffective, Deering has failed to explain how, or why, he did not receive competent assistance from his other retained counsel, attorney Oppenheimer. See United States v. Dunfee, 821 F.3d 120, 128 (1st Cir.2016)("Where…the defendant was represented by multiple attorneys, an ineffective assistance challenge is particularly difficult to mount.")(citing Lopez-Nieves v. United States, 917 F.2d 645, 647 (1st Cir.1990)).

---

[8] Petitioner also argues that counsel was ineffective for failing to present the advice-of-counsel defense as a mitigating factor. See Docket No. 1. The implausibility of that theory has been discussed ad nauseam. The court's earlier conclusion still holds true when applied to the sentencing stage of proceedings. Simply put, given the flurry of evidence against him, Deering would not have secured a lesser sentence by advancing the advice-of-counsel defense during sentencing.

Civil No. 16-1655 (PG)                                        Page 14

As a final note, the court calls attention to the fact that **not
once** in the three years that elapsed from his pleading guilty until
his sentencing – and the many cooperation-driven and case-related
meetings in between – did Deering ever exhibit hesitation, reluctance
or regret regarding his plea, or his legal representation for that
matter. And despite being sentenced pursuant to the terms of the plea
agreement and recommendations of the prosecution, unscathed by the
legitimate (and dare we say, habitual) use of court discretion, this
obviously intelligent petitioner has had a change of heart.[9] However,
"[w]hen a criminal defendant has solemnly admitted in open court that
he is in fact guilty of the offense with which he is charged, he may
not thereafter raise independent claims relating to the deprivation of
constitutional rights that occurred prior to the entry of the guilty
plea." Lefkowitz v. Newsome, 420 U.S. 283, 288, 95 S.Ct. 886 (1975)
(quoting Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602
(1973)); see Perocier–Morales v. United States, 887 F.Supp.2d 399, 417
(D.P.R.2012).

In light of the foregoing, the court concludes, without serious
question, that petitioner did not receive ineffective assistance of
counsel.

### III.   EVIDENTIARY HEARING

On September 19, 2016, the petitioner filed a motion for a
pretrial conference under Local Rule 16(c).[10] See Docket No. 24. He
further requests that the court determine whether an evidentiary
hearing is warranted pursuant to Rule 8(a) of the Rules Governing §
2255 Proceedings. See Rule 8(a), Rules Governing § 2255 proceedings
(directing the district court to review the answer, record of prior
proceedings and other relevant materials to determine whether an
evidentiary hearing is warranted). In the alternative, the petitioner
requests that an oral argument be set with respect to his § 2255
petition. Id. at page 2.

Evidentiary hearings in § 2255 cases are the exception, not the
norm, and there is a heavy burden on the petitioner to demonstrate

---

[9] The court is well aware of Deering's educational background and the fact that
he completed a year of law school.

[10] Local Rule 16(c) allows a party to request a pretrial conference provided
that the motion is accompanied by a certificate of reediness. See L.Cv.R. 16(c)
(D.P.R.2009). The petitioner's motion contains a certificate of readiness that meets
the requirements of Local Rule 16(c).

that an evidentiary hearing is warranted. <u>Moreno-Morales v. United Sates</u>, 334 F.3d 140 (1st Cir.2003). An evidentiary hearing "is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir.1978). Such is the case of Deering's motion to vacate. Having ruled that the petitioner's ineffective assistance of counsel claim lacks specificity, independent corroboration and support in the record, the court finds that an evidentiary hearing is not warranted. Accordingly, Deering's request for an evidentiary hearing or oral argument on the matter is **DENIED.**

### IV.   CONCLUSION

For the foregoing reasons, the court concludes, without serious question, that the petitioner failed to establish that counsel's performance fell below an objective standard of reasonableness or that the alleged errors on counsel's part prejudiced him. Deering has presented no evidence of any deficiencies producing "'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" <u>Knight v. United States</u>, 37 F.3d 769, 772 (1st Cir.1994)(<u>quoting</u> <u>Hill</u>, 368 U.S. at 428, 82 S.Ct. 468)). Consequently, petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Docket No. 1) is hereby **DENIED,** and the above-captioned case is **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

### V.   CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that the petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, November 29, 2016.


                                   S/ JUAN M. PÉREZ-GIMÉNEZ
                                   **JUAN M. PEREZ-GIMENEZ**
                                   **SENIOR U.S. DISTRICT JUDGE**